on behalf of the people of the state of Illinois. And Assistant Public Defender Harold Winston on behalf of Defendant Joanne Higgenbotham. All right, you understand the procedures here are quite lenient, so make your best arguments but don't spend all day. Good morning, Your Honors. Once again, the people would like to reserve about two minutes for rebuttal. That's fine. I'm sorry to interrupt. Please understand that these microphones record only for the system. They don't amplify. So the people in back of you cannot hear a word you're saying. And we ask that you speak up. Yes, Judge. May it please the Court, Counsel, once again, I'm Assistant State's Attorney Kalia Coleman on behalf of the people of the state of Illinois. Your Honors, the trial court's judgment granting Defendant's motion to dismiss and denying the people's motion to reconsider on grounds that Defendant's failure to appear in court merely told the 160-day speedy trial term rather than waived her speedy trial demand was erroneous and should be reversed, and this case should be remanded with instructions to reinstate all charges against Defendant. The trial court's decision was at variance with the clear and unambiguous language of Section 725 IOCS 103-5B's waiver provision, which explicitly states that the Defendant's failure to appear for any court date set by the court operates to waive the Defendant's demand for trial made under that subsection. The trial court's decision was also at variance with this court's ruling in People v. Zacharoskis and People v. Minor. Your Honors, this case presents a question of statutory interpretation, which is a question of law, which entitles this court to review this case de novo. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. And in order to determine the legislature's intent, the best indication of that is to give the language of the statute its plain and ordinary meaning. Your Honors, the clear and unambiguous language of Section 103-5B explains that a failure to appear operates to waive a speedy trial demand. That's exactly what happened in this case. The facts in this case shows that on April 23rd of 2010, Defendant failed to appear in court. On April 18th of 2010, Defendant again, on a second occasion, failed to appear in court. And finally on May 18th of 2010, and then finally for a third time on May 25th of 2010, Defendant again failed to appear in court. We also know from the record that on the date of May 18th, defense counsel made a representation to the court, explained to the trial judge that at that time she was unaware as to Defendant's whereabouts, that she had not made contact with Defendant since the April 23rd court date, and that she could not explain to the court or give the court any explanation as to why Defendant was not in court on that date. The people on that date asked that a bond forfeiture warrant be issued. Over that objection, the court did grant a continuance, but the court made clear that if Defendant was not present in court on May 25th, that a bond forfeiture warrant would be issued. Your Honor, the people submit that those facts are exactly analogous to People v. Zachariaskas and also People v. Minor, where in both of those cases, the defendants failed to appear in court, defense counsel had no idea of the whereabouts of those defendants on the date that they failed to appear in court, and that should have been treated as in that case where there was a failure to appear, it should have been treated the same in this case as a failure to appear. And given the clear and unambiguous language of Section 103-5B, a failure to appear operates to waive a defendant's demand for trial, and therefore, on September 1st of 2010, when Defendant made another demand for trial, the people argued that the term started anew. It started at day zero on September 1st of 2010. Your Honor, there's another issue regarding whether or not the statute accounts for explained versus unexplained failures to appear. As the people have previously stated to this court, the language in the statute must be given as plain and ordinary meaning. This issue was decided in the case of People v. Minor, which is a case that was decided in December of 2011 by this court, by the First District. The court in that case explicitly stated that this court cannot write into the statute language that does not exist. If the legislature had intended for there to be an exception for explained failures to appear, that language would have been written into the statute. It does not exist. Therefore, the people argue that this statute has to be given as plain and ordinary meaning. We have a situation here where the defendant failed to appear for court on three court days. On at least two of those court days, there was no explanation, no idea as to why the defendant was absent from court, and therefore, the trial court should have determined that that was a waiver of the speedy trial term. Furthermore, Your Honors, under Section 725 IOCS 5-114-4I, that section deals with physical incapacitation, a situation where continuance is granted, where a court finds there's physical incapacitation. And the language in that statutory provision provides that when the court is given proof that physical incapacitation has been removed, that the speedy trial term shall suspend and then it will commence anew. Okay, that's where I want to start asking questions. When you say anew in conjunction with 105 and suspend, explain to me the difference between suspend and toll and whether anew means it starts anew from the date that the person is determined to be healthy or the excuse is run out. I want to know whether it commences from then or does it end and start anew, and why? Well, it's the people's position that the term starts anew at day zero, that it doesn't toll, in other words, and pick up from where the 160-day term left off. And the people maintain that position because if this court looks at Section 103-5F, which deals with situations where the court determines it grants a continuance because it's a delay occasioned by a defendant, that statutory section uses the words delay occasioned by the defendant shall temporarily suspend for the time of the delay, the period within which a person shall be tried. And on the day of expiration of the delay, the said period shall continue at the point at which it was suspended. That language is completely different than in Section 114-4I, which states that such continuance shall suspend the provisions of Section 103-5 of this Act, which periods of time limitations shall commence anew when the court, after presentation of additional affidavits or evidence, has determined that such physical incapacity has been substantially removed. As explained in the people's brief, Section 114-4I, the language in that section, uses suspend, stop. In Section 103-5F, there's a word preceding suspend. It's temporarily. That indicates that the court, the legislature, in drafting those two statutes, saw the circumstances as being different. That in a situation where a defendant is physically incapacitated, the speedy trial term stops, and when the court determines that that physical incapacitation has been removed, that it shall commence anew. That language, shall commence anew, has to be given meaning, and anew meaning that the term should start again. That language is absent in 103-5F, and instead it says that the said period, referring to the 160-day term, shall continue at the point at which it was suspended. Those two statutes have completely different language, and the people would argue that's indicative of the legislature's intent to treat the situations differently, and how the 160-day term should be treated differently. So if changing the facts slightly, saying I'm agreeing with the facts the way you've stated them in the case here, but in a different case, let's say that instead of the person bringing something in, they bring it in before, and they get a continuance. And then they come in, the attorney comes in again, and has another document saying the person. So if it's ongoing that way, that the attorney brings something in, and it might go on for weeks or months, you're saying it would start, not start anew, but it would be a straight continuance. No, Your Honor. The people would still maintain that in that circumstance, if defense counsel is bringing in documentation saying that my client is physically incapacitated, the court then accepts that documentation as a proof of physical incapacitation. According to the language of section 114-4I, when the defense counsel would then have to bring in documentation along, I guess the people would assume with defendant's presence, showing that the physical incapacitation has been removed. At that point, when the court determines that that defendant is then capable of returning to court, by the language of the statute, the speedy trial term will commence anew. It will start over at day zero. So you're saying that either our fact situation here, or the one I gave you, it would start anew. Absolutely, Judge, because there has to be a determination that the physical incapacitation has been removed. And once that determination has been made, according to the language of the statute, the speedy trial term will commence anew. In either situation is the people's position. Counsel, what's the point of using the word suspend in the same section, 4I? Well, the people would argue that the use of the language suspend is to enlighten or make it known that the term that is in existence should stop, and that a new term will start over once it's proven. They meant stop. Why didn't they just say end? Well, Judge, the people would argue that those would be synonymous terms because. No, not at all. In every other part of this dialogue that we're having, suspend means stop for a minute and then start again. In this particular part, you're asking us to read the word suspend combined with commence anew to mean suspend meaning it didn't stop for a while, it ended, and commence anew means the clock starts from zero. And I'm asking how you can do that when both words are in the same section. Well, Judge, the people would argue that if suspend is to mean to temporarily stop and then to continue, then there would be no point for the legislature to have included in Section 103-5F the word temporarily suspend, which is immediately preceding the word suspend in that section. Not in 4-1. I'm sorry, Judge. Now, you're aware of the fact, are we, that commence anew is not used very often in this code. Yes, Judge. But when the two words together create a difficulty, and that's really what we're being asked to figure out, what do they mean? Yes, Judge. So you're telling us that what you think they mean is commence anew means start from zero. Yes, Judge. Even without reference to the earlier word in the same section, suspend. Well, Judge, just to clarify, the people's position is that commence anew does mean start at zero, and as argued in the people's brief, you do have to give consideration to the word suspend in relation to commence anew. And the people's position is the word suspend in 114-4I means to stop, and that commence anew means to start over. The people extrapolate that interpretation because in looking at Section 103-5F, immediately preceding the word suspend, it says temporarily, which temporarily means for a certain period of time, and suspend stops. So the delay occasioned by the defendant shall temporarily suspend. And then the language after that says, and on the day of expiration of the delay, the said period shall continue at the point at which it was suspended. When you take that language from that statutory provision and compare it with the language that the legislature chose to use in 114-4I, the people would argue that the words commence anew means that it has to start over. That's the people's position and the people's interpretation. Let me ask you a different question. If I decide I'm going to beat this section, you know, I'm going to get out of the DUI, all I've got to do is go into the hospital, get doctor's notes under the interpretation that anew doesn't mean it starts over. I can do that, and the term is going to run out. Is that not correct? Not the way you're interpreting. The way I'm saying anew doesn't mean start over. Then I've beaten the DUI, right? Absolutely, Judge, and that's possibly something that the legislature could have thought about and would be a reason as to why shall commence anew means that the term should start at day zero. So before we had the two, well, I don't know if it's two amendments or the changes, there were no exceptions. It was if you BFW, you're out. You start over. Absolutely, Judge. There was no anew. There was no temporarily whatever. That's true, Judge. So, in effect, what we've got is legislation made that creates a mess and alters and gives excuses to beat the system. That's potentially true, Judge, but if the section is Unless we interpret it your way. Absolutely, Judge. And that's the people's position that in order to avoid a circumstance where a defendant is able to circumvent the system and avail himself of the speedy trial term, this statutory provision should be interpreted as meaning that shall commence anew means that when the court determines that a physical incapacitation has been removed, the term starts at day zero. So I'm at 57 days and I decide, gee, I don't think I want to get convicted of a DUI, so you know what I'm going to do? I'm going to go to Brazil for three months and my doctor down there will write me a note every day. Now, the question is, if I send him to my attorney and he comes in every day, at what point are we able to prosecute this guy any longer? Well, even in that circumstance, Judge, if the attorney is coming in and providing documentation to the court, as the people argued before, under 114-4i, there would have to still be some proof brought to the court that the physical incapacitation has been removed. Meaning that defendant is then able to appear in court. And at that point in time, the term will start at day zero. There is no tolling effect. The term starts at day zero. So in either situation, as Your Honor pointed out, the people who maintain the legislature's intent in drafting this statutory provision is to circumvent a situation where a defendant is able to basically avail himself of the 160-day term and no longer, the people would then no longer be able to prosecute that case. Okay. Based on the aforementioned reasons, all the reasons argued before this court, the people would argue that, the people would ask that this court reverse the decision of the trial court and reinstate, and remand this case with instructions to reinstate all charges brought against defendant in this case. Thank you. Thank you. May it please the court, counsel. Hospitalization in the intensive care unit. Hospitalization for acute respiratory failure. And respiratory failure means not enough oxygen is getting from the lungs to the blood. These were documented by the hospital and by the physician. The state had no time questioned the medical reasons for her not being in court. This is not a case like Zacharuskas or Minor where the defendant simply mixed up the dates, and the defendant had an easy recourse, calling their attorney or calling the clerk's office for the court to find out the right date. This was a case that the absences were involuntary. And further, the trial judge recognized that. He twice in his rulings, he said things like, she was incapacitated and hospitalized, and for no fault of her own, missed court. He talked of his personal observations about her physical difficulties. So should this let the person off the hook? If I, the defendant, and I'm walking to court, and I'm hit in the street by a car and I'm hospitalized, yes, I should be off the hook. In my speedy trial, I should continue. I think, Your Honor, because I'm not at fault. And I think that's the case here. You know, the word waiver is used. So you hit and run and leave the scene of an accident, and you are off the hook. Wait. I'm the driver or I'm the victim, Your Honor? You're the victim. If I'm the victim, then I think – No, I mean you're the driver. Oh, the driver. That's different. No, the driver is not physically incapable of being in court. He can come to court. No, I'm saying in the situation you have, your party had an accident. Oh, but my hypothetical. Right. So for all practical purposes, the poor person injured has no recourse because you get off on the 160 days. Your Honor, with respect, I was saying the opposite. I was talking about the victim. The period should be told to the victim, not to the driver. The driver would have no protection. Why would the driver have protection? All right. Go ahead with your arguments. All right. The legislature used the word waiver in the statute. We know what the word waiver means. The U.S. Supreme Court has defined it. The Illinois Supreme Court has defined it. In fact, the Illinois Supreme Court decision, Gallagher v. Lennart, is cited in Zachariascus, and it means an intentional relinquishment or abandonment of a known right. Here, there was no intentional relinquishment. Therefore, the waiver clause cannot apply. Now, as far as the second part of this, the 114I, the state talks about wording the statute in other wording. But there is other wording. I agree it's poorly worded. I agree it's poorly worded. I said in felicitous, I think, in my brief. 725ILCS1035A shows what the legislator should do when it wants the term to start at day zero. It says explicitly there, the term will begin again at day zero. That was not the language they used in 114I. Instead, as Justice Puczynski pointed out, that sentence starts with the word suspend. And I happened to look up dictionaries in my office, and I apologize, my blacks is from 1979, but it says to interrupt, to cause, to cease for a time, to postpone, delay, to discontinue temporarily, but with an expectation or purpose of resumption. That's on page 1297. I looked at Webster's Universal Unabridged, which we have back to 1983, to cause, to cease, or become inoperative for a time, to stop or withhold temporarily. And their example is, train service has been suspended. And I also looked at Roche's College Thesaurus, which has synonyms defer or postpone. The meaning of suspend is clear. I agree that the meaning of commence anew is not clear. But I think in the context with suspend, it has to mean that it resumes. And particularly if you think this kind of reason for missing court, because you're physically incapacitated, is much stronger than other reasons. And the other reasons, which are simply delay occasioned by the defendant, it's clear that it says suspend and then continue. Now, I do use the word temporarily suspend, but I would argue that temporarily is a redundancy based on those other definitions. The legislature is not always artful in the wording. If you look at the cases involved, we have Zacharuskas, Kohler, Miner, and Patterson. And three of them involve warrants issued, Zacharuskas, Miner, and Patterson. And in each case, the appellate court placed some weight on that. And they should, because there's the trial judge deciding that the absence is serious enough that a warrant should be issued. In Kohler, when there was no warrant issued, the court found that the time period should continue. And here, the judge did not issue a warrant. Now, on the May 18th, it's true the attorney said he had been unable to contact his client, but he also said the last he heard, she was in the hospital. And we know from the note that it turned out she was in RML Specialty Hospital in Hinsdale from May 4th to June 2nd, which covers the last two dates she missed. And we also know she was in Mercy Hospital Intensive Care on the first date she missed. There is no evidence at all that there's any effort by her to avoid court. In fact, at one point, I think the judge says he knows he's trying to get her tried. And part of the problem here is the state wasn't watching the statute. When they came back and they had agreed on a date of September 1st, it was the state that wasn't ready, and the state took a long date to late October. The state didn't renew its earlier motion for 21 days extra, which it could have, and the state just let the ball fall down here. While the standard of review on a statute, of course, is de novo in statutory interpretation, here the judge made some specific factual findings. And, of course, the standard of review of those is you uphold them unless they're manifestly erroneous. He found her absence was caused by hospitalization. He found she was not malingering. He found that she was incapacitated and miscouraged through no fault of her own. He observed her obvious physical difficulties. And he found her absence was not willful. And he came to a conclusion opposite from Zacharauskas, and the wording of Zacharauskas was cited in minor in paragraph 14. He said she did not voluntarily relinquish the right to a speedy trial. Now, I believe that's a conclusion of law, and Your Honors can look at that de novo. But I think this clearly separates it from Zacharauskas in minor and also Patterson. In all those cases, defendant had no good reason for missing court. In all those cases, a warrant was issued. There was no warrant here. And then I've cited also an Illinois Supreme Court case, Hall v. Henn, to the effect that you have to presume a legislature did not intend an absurd or an unjust result, 208, IL-2nd, 325, and 330. In my opinion, it would be absurd and unjust to be penalizing someone who misses court because of hospitalization through no fault of our own, when if they just occasion a regular delay, they would just get a continuance without penalizing their speedy trial act. Therefore, I conclude the legislature could not have so intended. Counsel? Sure. Sorry to interrupt you, but if we were to take your point of view, then we would be writing into 114.4i something different than is there. The statute says upon written motion of the defendant or the State or upon the court's own motion and after presentation of evidence, the court determines that the defendant is physically unable to appear. What you're asking us to do is add to this, oh, but that can happen after the fact. And what the language of the statute says to me is it has to happen before the continuance is granted. As I read the statute, statute is silent on when that has to happen. And I don't think the statute bars accepting documentation after the fact. Well, where does it say that? Excuse me. Where does it say that? It doesn't say that. So you're asking us to add something to the statute. We can all be sympathetic to Ms. Higginbotham's status, absolutely. But the fact is that's not in the statute. Where is it in the statute? Your Honor is right. It's not in the statute. But again, if you consider a case like in my hypothetical, someone could be hit by a car going to court. I can't believe the statute would bar getting subsequent proof of what happened and why they weren't in court. But don't these have to be somewhat absolute one way or the other? I mean, you can't expect a new prosecutor prosecuting a DUI to have five variable alternatives on what time point is this 160 run and when is this 160 not run. So Justice Puccinsi makes a good point. If it's before the fact, it makes somewhat good sense. If it's after the fact, it gives all my examples that you could create anything after the fact. And that's where we're kind of ‑‑ That's an interesting point. I would say ‑‑ If you try to accept your position, it's difficult because of all the doors that open. Well, I would say that if it's after the fact, the court has the right to demand stronger proof that it's satisfied. Now, here, you know, they were furnished with a doctor's note giving specific dates of a hospitalization. I think the judge could have said, I want a note from the hospital as well. I think the State could have asked. The State never asked for more. The State never asked the judge to clarify where they were in the speedy trial before it got the last continuance. Excuse me. And I agree that the State could have done that. Counsel, just specifically to this case, the record shows that the prosecutor and the court and the defense attorney were well aware of the fact that this defendant had some family support. She's not your worst case scenario, mature person, living alone, no family, no friends, no support system, totally unable to communicate with the outside world when something happened to her. There were apparently people in her life that knew what was going on. And so in this particular case, this case, what you're saying is she had no, she was in respiratory care. She had no way to, I think I heard you say she had no way to communicate with her attorney. But she did have a support system that the court could have asked about, the State attorney could have asked about, or the attorney could have figured out. And no one did that. And so the fact points were still stuck with the exact words of the statute, which upon written motion or the court's own motion and after presentation of evidence, the court determines the defendant, then a continuance shall be granted. But that's all before the continuance is granted. It's not after. It's not two months later. How can we add that? What authority do we have to add that? I guess all I can say, Your Honor, is it doesn't specify that documentation can never be received at a later date. I understand that's not spelled out there. But, again, I think that leaves it unclear because, again, as the situation I gave, there can be situations where you couldn't get documentation at the time of the continuance. And I think the judge was aware of that when the attorney said, last I knew she was in the hospital, so he gave a week. Now, unfortunately, the record is barren as to what happened in the week and what efforts the attorney made. I don't know if my client was on a breathing machine and can do it. I don't know if any close relative was available or not. I wish the record was fuller. But the record is what it is, and I think we just have to go on what the record is. This record indicates six prior BFWs? I'm only aware, I know, of three since she made the trial demand. I think there were earlier. And, again, I don't know that the record is clear about why she missed court. And, again, I don't recall that, Your Honor. I was focusing on what happened after the demand, and clearly on the first date we know the lawyer had a note right at that time to explain why she wasn't in court on that day. Which conforms with this section of the statute. Yes, it conforms completely with that section of the statute. The judge evaluated it, accepted it, heard from the attorney, and granted a continuance. And it was all done before the continuance was granted. Yes, that happened on the first date. No matter whether we want to be nice guys or not, I'm trying to figure out how anybody gets the authority to add, oh, and you can do this later, too. Well, again, if we consider the situations where something happens on the day of court, is the legislature saying you're out of luck because you had no explanation in time? Isn't that up to the legislature?  Isn't that up to the legislature? Well, I mean, it seems to me then we have that absurd result from Hall versus Henn, that they can't have intended that. And we all know there are cases, I mean, God forbid you could have a heart attack on the day of court. And you may not be able to reach your lawyer. Before all of this was amended and altered, this issue wouldn't be coming to us because the BFW would have ended it, no matter what your excuse was. But there was no warrant issued in this case. No, but there was a BFW entered. It was entered, but not issued. It may be entered and continued. Entered and continued, yes. And I think there's a difference. I mean, the other cases place a lot of weight on that a warrant is issued, and that's Miner and Zacharuskas and Patterson. And there was no warrant issued here. All right. Anything else you wish to add? Let me see. Again, I would just say that understanding that the 5114-4I does not deal with the situation explicitly where something happens to someone on the day of court so that an explanation is not available, it seems to me we can't assume the legislature meant to exclude that type of situation. And if they didn't, it means a subsequent explanation. But other than you are, they're not just saying after the fact. They're saying from day one. They're arguing that anew has to start no matter what. Which I think is totally unfair. I mean, and I don't think the legislature intended it. I think that, indeed, is implicit as wording. But until it was before all of this. So you're saying commence anew means? I think it means resume in this context because of the word suspend being earlier in the sentence. I think suspend's meaning is clear. Two troublesome words put together in a troublesome way. I think suspend should control. It didn't say terminate, which it could have. What do you think about Kohler? How does Kohler impact on all of this? Well, I think Kohler is very helpful. I'm not sure I fully agree with its reasoning. I mean, if you accept Kohler's reasoning in full, I think we're fine. Kohler points out the error of a defendant, called up the attorney and said, I know I can't be in court. There's no sign of any documentation, just the word on the phone. There was no warrant issued. Now one difference in Kohler is the state doesn't object. The appellate court says, well, we don't have, it's not a case of defendant not being present because counsel's present. We just have mere absence. We don't have a failure to appear because the attorney's there. Well, if you accept that reasoning, of course, we're fine here because the attorney was there at every date. I have to say I'm not sure that's intended by the statute in all fairness. It goes along with my theory that I can hire an attorney to appear forever if I want to beat it. That's why I have a problem with that part of Kohler. Right. But, I mean, it seems to me what Kohler is saying is if there is a medical reason, then that's considered more than a failure to appear, and we have to consider that. And, of course, here we not only have a reason, we have documentation. We don't have a client's word alone. We have a hospital and a physician. But is it not true that prior to these amendments, this would not be a situation that would be being debated? It would have been a clear start over of the 160. Well, without the waiver amendment, we also would have an argument that it should be treated as under F, as delay occasioned by the defendant, in which case it's clear that it doesn't start over. The question is how you work F together with 114.4. And that's a question the legislature doesn't clearly resolve for us, unfortunately. And I think that it's also a question of whether or not the legislature, with these words, could have possibly intended that the doctor's note could have come after missing court twice. Because it wasn't just the next day that something happened to her. It was over a series of weeks. One week, I believe, Your Honor. Right. Again, I wish the record was clearer what happened in the week where captains of the record. I think the record is clear. I think we've all agreed that using the words commence anew in the same section as suspend complicates life. And I'm just trying to figure out under what authority we have to rewrite the statute. Anything else? I guess I wouldn't see it as rewriting. I mean, I think I've known other cases in criminal court where an explanation comes in at a subsequent date. Now, sometimes the warrant is issued on the first date, and then it's just withdrawn. But it would seem to me in a medical situation where you can be emergency, where someone could be on a breathing machine, you know, we have to consider that that can happen. I don't think the legislature meant to rule it out with that wording in 114.4i. Are you done now? Thank you, Your Honor. So you know what you've got to aim at, 114, the three variables. Nail them down. Well, Judge, as Justice Puchinski pointed out, one of the issues that the language of 114-4i presents is whether this documentation can be presented after the fact. Based on the reading of the statute, the documentation cannot be presented after the fact. In fact, the court has to be presented with documentation of physical incapacitation based on the reading of that statute before a continuance is ever granted. And even when presented with that documentation, the people will maintain their position that the words shall commence anew means that when the incapacitation is removed, the speedy trial term starts at day zero. That's how the statute reads. That's how the statute should be interpreted because that's the plain and ordinary meaning of the language in the statute. So it's an absolute, you're saying? It is, Judge. That's the people's position. All right. Furthermore, Judge, the people would like to just briefly address how the cases of people v. Zacharoskis and people v. Minor are analogous to the facts in this case. Just as in those cases, on the date that the defendants in Zacharoskis and Minor, they failed to appear in court, defense counsels in those cases had no idea of the defendant's whereabouts, which is the same thing that happened in this case, and counsel misquotes Zacharoskis because in people v. Zacharoskis, a BFW was entered and the case was continued. The exact same thing that happened in this case. On May 25th, a BFW, a bond forfeiture warrant, was entered by the trial court and the case was continued to the June 22nd date. And in Zacharoskis, that was treated as a failure to appear. So before we even get to 114-4i, we have to consider 103-5b, the waiver provision. It's the same facts here. So the court ultimately doesn't even have to reach a decision based on 114-4i because we have a circumstance that is clear. The facts in this case, under 103-5b, it operates as a waiver. Defendant failed to appear in court. What defense counsel is asking this court to do is to allow an excuse or documentation that's provided on a later court date to substitute defendant's failure to appear on the day in court. That would amount to complete inequity, unfairness, and would be entirely prejudicial to the people. Because at that point, the people, if that's the court's interpretation, would have to anticipate whether on a future court date, this BFW that's been entered and continued, or the court maybe is going to strike it and say, well, now defendant is providing excuses to why he or she missed those court dates. So now the term isn't waived. It's told. And you have to bring defendant to trial within that period of time. And, Your Honors, the people would argue that would be entirely prejudicial to the people, and it would impede the people's ability to prosecute a case. The facts in this case are completely analogous to Minor and Zakharovsky's. We have a defendant that failed to appear in court, and therefore that was a waiver of the speedy trial demand. And the term started again at day zero on September 1st when defendant entered another written demand for trial. And based on that, Your Honor, we would ask once again that Your Honors reverse the trial court's ruling and reinstate all charges, remand with instructions to reinstate all charges against defendant. Thank you. You both argued very interestingly, and your briefs were very well done. So you give us something to work on. Thank you.